Lou Platt, Appellant, *v.* Tess Hat Co. Inc., Respondent.

First Department, June 18, 1952.

*Julius Haimowitz* for appellant.

*Saul K. Ellenbogen* for respondent.

Bergan, J.   Plaintiff is a designer of women's hats and defendant manufactures them.   On June 12, 1950, the parties entered into a written contract.   Plaintiff undertook to " supply " defendant " with an entire style line of models " of hats.   Defendant undertook to pay plaintiff 5% commission " On the gross sales of these models ".

An action for commissions was maintained in the Municipal Court and the trial resulted in a jury verdict for plaintiff of $700. The court denied defendant's motion to set the verdict aside, but on appeal the Appellate Term modified the judgment by reducing the plaintiff's recovery to $83.10, the amount defendant conceded to be due under the contract. The case is here by our permission.

The proof shows that the style line manufactured by defendant was done on " contract," which in the trade meant that the material was furnished to defendant by the owner for processing, utilizing in the instances that are here material the plaintiff's designs.

The price received by defendant for this work represented largely labor and was therefore considerably smaller than it would have been had the hats been processed with defendant's own material and sold by defendant as a manufactured product.

Thus the crucial question in the case is the intent with which the expression " 5% commission " on " the gross sales of these models " was used in the written agreement. Plaintiff argues that it was intended to mean that the commission was to be based on the sales value of the product utilizing his design; defendant that the term " gross sales " meant the amount it received for working on the material of others and utilizing plaintiff's designs. If defendant is right the plaintiff's designs could be used and the commission based on only a fractional part of the value of the hats.

We regard the question of intent as a fair issue of fact in the action, but in the form in which the parties elected to try the case it was largely submerged and lost sight of in an issue of quantity. Plaintiff had, of course, the burden of showing extent of defendant's utilization of the style line designed by him, and he attempted to do this by showing a stipulation made on an examination before trial that in the period in question defendant had shipped 2,554 hats. It was shown, however, without any factual dispute from defendant's records that plaintiff's designs were used by defendant in the manufacture of only 785 hats.

The issue was presented to the jury as to which of these quantities was correct. The over-all contentions of the two parties on the commissions were also submitted to the jury for calculation according to the quantity to be found by it, either the market values fixed by plaintiff and treated by him as " gross sales " under the contract on one side; or the actual amount received by defendant on the contract work as shown by defendant's books, on the other side.

In arriving at its verdict of $700 the jury seems to have adopted the plaintiff's over-all contention as to quantity, of approximately 2,500 hats at $6 a hat, one of the figures of value given by plaintiff, to reach a gross sales value of $15,000 and a commission of $750 on which $50 had been concededly paid.

If the defendant's records be accepted, however, as to utilization of plaintiff's models, the prices received by it for labor would be $133.10 and the amount due, giving credit for $50 paid, a balance of $83.10 to which the Appellate Term reduced the recovery.

There is, as the Appellate Term necessarily found by its order of reversal, no substantial evidence of the quantity of hats in which plaintiff's designs were utilized other than the quantities shown by defendant's records.

But there is an open factual question, we think, whether plaintiff is bound by the amount of commissions that would be calculated at 5% of the charge defendant made for labor on materials not owned by it, or whether the commissions would be based on the fair value of the hats on the market.

The utilization of a creative design by a manufacturer clearly enters into the value of the product he makes, and whether parties using a term such as '' gross sales '' of a '' style line of models '' intended to limit themselves to the cost of labor performed, or of value as a basis of calculation, is a question we regard as open. to factual evaluation on this record. It should be clearly presented on a new trial.

The determination of the Appellate Term should be reversed and a new trial ordered, with costs to the appellant to abide the event.

Dore, J. (dissenting). Plaintiff, over defendant's objection, was permitted to testify to conversations varying the terms of the written contract; viz., plaintiff said that after the written contract was signed the sale price in conversations '' was then fixed '' and the gross sales based upon an average price of $11.50 per hat. The statement of the plaintiff's attorney that the books showed defendant had shipped 2,554 hats which at $11.50 amounted to $29,371 on the basis of which the plaintiff asked for $1,418.55 was not evidence and there was no stipulation making it a substitute for evidence. On the basis of quantity and price these were the figures considered by the jury although the court inconsistently charged that the jury should not take into consideration testimony given by the plaintiff after the making of the contract.

The only proof as to sales was offered by defendant; Exhibit A, shows that 785 of plaintiff's hats were shipped during the contract period for a total of $2,661.90. The court, therefore should have directed a verdict on that basis, i. e., 5% of $2,661.90 less $50, or $83.10, since defendant admitted as much and plaintiff had not established anything different. It should not have submitted the case to the jury on the $1,410 claim because there was no competent proof whatsoever to support it. Even the jury recognized this by bringing in a verdict of $700 — an obvious compromise.

The Appellate Term's reduction of the recovery to $83.10 was fully warranted as the record does not justify any recovery beyond that amount. Accordingly, I dissent and vote to affirm.

Peck, P. J., Callahan and Heffernan, JJ., concur with Bergan, J.; Dore, J., dissents and votes to affirm in opinion.

Determination of the Appellate Term reversed and a new trial ordered, with costs to the appellant to abide the event. Settle order on notice.